Michael R. Minkoff, Esq.
Bar No.: 084112013
JOSEPH & NORINSBERG, LLC
110 East 59th Street, Suite 3200
New York, New York 10022
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CAROLINA LINARES, ROXANA FALCON, IRIS DIAZ, and JHON JAIRO SOTO, on behalf of themselves, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>DULCE DE LECHE BAKERY, LLC,<br><br>Defendant. | Civil Action No.:  22-cv-2969<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded**<br><br>**Class and Collective Action** |

Plaintiffs Carolina Linares ("Ms. Linares "), Roxana Falcon ("Ms. Falcon"), Iris Diaz ("Ms. Diaz"), and John Jairo Soto ("Mr. Soto") (collectively "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated ("FLSA Plaintiffs" and/or "Rule 23 Plaintiffs"), by and through their attorneys, JOSEPH & NORINSBERG, LLC, as and for their Complaint against Dulce De Leche Bakery, LLC ("Defendant"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

**NATURE OF CASE**

1.      Plaintiffs bring this action for Defendant's violations of: (i) the overtime provisions of the Fair Labor Standards Act  ("FLSA"), 29 U.S.C. §§ 201-219; (ii) the  New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56(a), *et seq.*, as amended by the New Jersey Wage

Theft Act ("NJWTA"); (iii) the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1, *et seq.*;  (iv) the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12; (v) the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-3; (vi) New Jersey common law, as set forth in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980); and (vii) any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.     Defendant owns and operates a retail and commercial bakery with three storefronts and a warehouse located in northern New Jersey. Defendant employed Plaintiffs as bakery workers and as a driver for their West New York, New Jersey bakery, wherein their job responsibilities include preparing items for baking, decorating cakes and pastries, general bakery cleaning and tidying, and making deliveries.

3.     As discussed below, Defendant regularly required Plaintiffs to work between forty-eight and sixty-five hours per week, yet Defendant failed to pay Plaintiffs overtime compensation at one and one-half times their regular rates of pay. Instead, in a deliberate attempt to circumvent federal and state labor laws and exploit its workforce, including Plaintiffs, Defendant implemented a uniform, company-wide policy to only pay Plaintiffs and others similarly situated at their straight-time rates of pay for all hours worked.

4.     Furthermore, Defendant failed to furnish Plaintiffs with accurate and/or complete wage statements as required under the New Jersey Wage Payment Law on each payday.

5.     Accordingly, Plaintiffs bring this action to remedy Defendant's violations of the FLSA, NJWHL, NJWTA and NJWPL.

6.      Plaintiffs therefore bring this lawsuit against Defendant pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendant's willful violations of the FLSA.

7.      Similarly, Plaintiffs also bring this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable NJWHL and NJWPL limitations period who suffered damages as a result of the Defendant's uniform and systemic violations of the NJWHL and the NJWPL.

8.      Moreover, on behalf of herself only, Plaintiffs Falcon asserts discrimination and retaliation claims arising under the NJLAD, CEPA, and New Jersey common law as established in *Pierce*. Specifically, after Plaintiff Falcon objected to gender discrimination in the form of workplace sexual harassment by her coworkers, and complained to her manager regarding the same, Defendant retaliated by terminating her employment, in direct violation of the NJLAD, CEPA, and *Pierce*.

## JURISDICTION AND VENUE

9.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising out of New Jersey law.

10.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), and as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

## PARTIES

### *Plaintiffs*

11.     At all relevant times herein Plaintiffs Linares, Falcon, Diaz, and Soto worked for Defendant in the United States and were "employees" entitled to the protections as defined in the FLSA.

12.     At all relevant times herein, Plaintiffs Linares, Falcon, Diaz, and Soto worked for Defendant in New Jersey and were "employees" entitled to the protections as defined in the NJWHL and NJWPL.

13.     Plaintiffs were employed by Defendant as bakery workers and as a driver in Defendant's bakery located at 6510 Bergenline Avenue, West New York, NJ 07093.

### *Dulce de Leche Bakery, LLC ("Defendant")*

14.     At all relevant times herein, Defendant was and is a domestic New Jersey limited liability company, with its principal place of business located at 6510-6512 Bergenline Avenue, West New York, New Jersey 07093.

15.     Defendant owns, operates and manages a retail and commercial bakery company with three storefront locations and wholesale warehouse located in Northern New Jersey.

16.     At all relevant times herein, Defendant exercised control over the terms and conditions of Plaintiffs' employment, in that Defendant had and exercised the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

17.     Additionally, at all relevant times, Defendant's qualifying annual business exceeded $500,000.00, Defendant employed two or more people, and was engaged in interstate commerce within the meaning of the FLSA by ordering supplies from vendors that originated out of state and traveled across state lines in furtherance of its bakery operations such as flour, sugar, and various other confections. Moreover, Defendant accepted credit card payments pursuant to agreements with out-of-state merchants, and accepted cash from customers which naturally moved across state lines. The combination of the foregoing which subjects the Defendant to the FLSA's overtime requirements.

18.     Accordingly, Defendant was and is the "employer" of Plaintiffs within the meaning of the FLSA, NJWHL, and NJWPL.

## COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiffs seek to bring this suit to recover from Defendant unpaid overtime compensation, and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on their own behalf, as well as on behalf of those in the following collective:

> Current and former non-managerial bakery workers and/or drivers, who during the applicable FLSA limitations period, performed any work for Defendant, and who consent to file a claim to recover damages for: (1) overtime compensation that is legally due to them; and/or (2) liquidated damages that are legally due to them ("FLSA Plaintiffs").

20.     Defendant treated Plaintiffs and all FLSA Plaintiffs similarly, in that Plaintiffs and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek during their employment; and (5) were not paid the required one and one-half times their respective regular

rates of pay, or the minimum wage, if greater, for all hours worked per workweek in excess of forty.

21.    At all relevant times, Defendant is and has been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs at the rate of one and one-half times their respective regular rates of pay, or one and one-half the minimum wage rate, if greater, for all hours worked each workweek above forty, yet it purposefully and willfully chose and chooses not to do so.

22.    Defendant's willful violation of the FLSA is evidenced by its knowledge that its policies violated the FLSA as Defendant paid Plaintiffs and FLSA Plaintiffs for thirty-to-forty hours of work via check, and the remainder of their hours beyond thirty or forty in cash - - or entirely in cash - - each week at their straight-time rates of pay to avoid detection of their unlawful activity, and its intentional and/or reckless choice to continue to operate in violation of the FLSA's requirements. Discovery will reveal evidence that Defendant blatantly ignored the FLSA's explicit requirement that employees must be paid for *all* hours suffered or permitted to be worked, and that underpaying its workers is an illegal practice.

23.    The precise number of FLSA Plaintiffs should be readily available from a review of the Defendant's personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

24.    Thus, all FLSA Plaintiffs are victims of Defendant's pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked above forty per workweek, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

25.      In addition, Plaintiffs seek to maintain this action as a class action pursuant to FRCP

23(b)(3), individually, on their own behalf, as well as on behalf of those who are similarly situated

who, during the applicable limitations period, were subjected to violations of the NJWHL and the

NJWPL.

26.      Plaintiffs seeks certification of the following FRCP 23 class:

> Current and former bakery workers and/or drivers who performed
> any work for Defendant during the statutory period within the State
> of New Jersey ("Rule 23 Plaintiffs").

27.      All of the requirements under FRCP(b)(3) are satisfied, as set forth below.

28.      Moreover, Plaintiffs and the Rule 23 Plaintiffs have all been injured in that they

have been uncompensated, under-compensated, or untimely compensated due to Defendant's

common policies, practices, and patterns of conduct. For instance, Plaintiffs and the Rule 23

Plaintiffs have suffered a concrete injury in fact and as a result have been actually harmed by

Defendant's failure to pay them overtime compensation for all hours worked beyond forty in a

week. Specifically, Plaintiffs and the Rule 23 Plaintiffs were deprived of their ability to purchase

with their timely wages, invest their timely wages, accrue interest on their timely wages, or

otherwise utilize the value that their wages would have held had they been paid timely.

### Numerosity & Ascertainability

29.      During the applicable NJWHL and NJWPL limitations period, the Defendant has,

in total, employed at least 100 employees that are putative members of this class.

30.      The precise number of the Rule 23 Plaintiffs is readily ascertainable through a

review of Defendant's personnel, time, and payroll records.

**Common Questions of Law and/or Fact**

31.     There are questions of law and fact common to each Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that the Defendant required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff; (3) whether the Defendant compensated Rule 23 Plaintiffs with overtime pay at their regular rates of pay or at time and one-half their regular rates of pay for all hours worked over forty in a week; (4) whether the Defendant compensated Rule 23 Plaintiffs for all hours of work; (5) whether the Defendant furnished and furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by the NJWTA; (6) whether the Defendant kept and maintained accurate records of hours worked by Rule 23 Plaintiffs; (7) whether the Defendant kept and maintained records with respect to the compensation that it paid to the Rule 23 Plaintiffs for each hour worked; (8) whether the Defendant has any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (9) whether the Defendant's actions with respect to the Rule 23 Plaintiffs were in violation of the NJWHL and NJWPL; and (10) if so, what constitutes the proper measure of damages.

**Typicality of Claims and/or Defenses**

32.     As described in the "Background Facts" section below, the Defendant employed Plaintiffs and Rule 23 Plaintiffs within the meaning of the NJWHL and NJWPL.  Plaintiffs' claims are typical of the claims of the Rule 23 Plaintiffs whom they seek to represent, as the Rule 23 Plaintiffs: work and/or have worked for Defendant as bakery workers in New Jersey; Defendant failed to pay them time and one-half their regular rates of pay for all hours worked beyond forty in a week; and Defendant did not provide them with accurate wage statements on each pay day.

Plaintiffs and the Rule 23 Plaintiffs enjoy the same statutory rights under the NJWHL and NJWPL to be paid overtime wages whenever their workweeks exceeded forty in a week, and to be furnished with accurate wage statements on each payday.

33.     Plaintiffs and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of the Defendant's failure to comply with the NJWHL and NJWPL.  Plaintiffs and the Rule 23 Plaintiffs all have suffered injury including lack of compensation and/or untimely compensation due to the Defendant's common policies, practices, and patterns of conduct.  Thus, Plaintiffs claims and/or Defendant's defenses to those claims are typical of the Rule 23 Plaintiffs' claims and the Defendant's defenses to those claims.

<u>**Adequacy**</u>

34.     Plaintiffs, as described below, worked the same or similar job duties as bakery workers as the Rule 23 Plaintiffs throughout their employment with Defendant.  Defendant did not pay Plaintiffs time and one-half their regular rates of pay for all hours worked over forty in a week, instead choosing to pay them only at their straight-time rates of pay for all hours. Defendant also failed to furnish Plaintiffs with accurate wage statements on each payday. This is substantially similar to how Defendant paid and treated the Rule 23 Plaintiffs.

35.     Plaintiffs fully anticipate providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendant's Answer. Thus, Plaintiffs would properly and adequately represent the current and former employees whom Defendant has subjected to the treatment alleged herein.

36.     Additionally, Plaintiffs' counsel, Joseph & Norinsberg, LLC ("J&N"), has substantial experience in the field of employment law.  J&N is a well-respected litigation firm that represents Plaintiffs primarily in a wide variety of employment matters, including individual and

class action litigation concerning wage and hour, discrimination, and harassment claims among others. J&N is dedicated to its clients, working tirelessly to achieve the best outcome for them, sometimes at a significant cost to the firm in terms of time, resources, and financial risk. Plaintiffs' counsel has handled hundreds of employment cases in federal districts courts, including dozens of Rule 23 class actions and FLSA collective actions.  Accordingly, Plaintiffs' counsel will fairly and adequately represent the interests of the putative class and will take all steps necessary to obtain class certification and appointment as class counsel.

<u>**Superiority**</u>

37.    A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender. This action will result in the orderly and expeditious administration of Class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

38.    Plaintiffs have no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, the Defendant treated Plaintiffs identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

39.    Any lawsuit brought by any other bakery worker and/or driver based in New Jersey and employed by Defendant would be identical to a suit brought by any other such employee for the same violations.  Thus, separate litigation would risk inconsistent results.

40.     Accordingly, this class action is superior to any other method for protecting Rule 23 Plaintiffs' rights, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## INDIVIDUAL ALLEGATIONS

**Carolina Linares**

41.     Plaintiff Linares worked for Defendant from on or about March 7, 2021 to February 6, 2022 as a bakery worker.

42.     Defendant assigned Plaintiff Linares to perform pastry decoration at Defendant's bakery located at 6510 Bergenline Avenue, in West New York, New Jersey.

43.     In her capacity as a bakery worker, Ms. Linares's primary duties include *inter alia*: (i) decorating pastries; (ii) cleaning; (iii) preparing other baked goods for baking or removing same from ovens; and (iv) helping out with selling products to customers as needed.

44.     Throughout her employment, Plaintiff Linares worked six days per week, from 7:00 a.m. to between 2:00 p.m. and 5:00 p.m., for an average of forty-eight hours per week.

45.     From the start of her employment until in or around mid-November 2021, Defendant paid Plaintiff Linares $13.00 per hour.

46.     Thereafter, from in or around mid-November 2021 until the end of her employment on February 6, 2022, Defendant paid Plaintiff Linares $15.00 per hour**.**

47.     Despite working between eight hours of overtime per week during virtually all weeks of her employment, Defendant never paid Plaintiff Linares at the rate of one and one-half times her regular rates of pay (i.e., neither $19.50 per hour, nor later $22.50 per hour), for any of the hours she worked beyond forty in a week.

48.     To conceal its wrongdoing, Defendant paid Plaintiff Linares forty hours per week via paycheck, listing only up to forty hours worked. Defendant paid Plaintiff Linares in cash at her straight-time rate of pay for all hours worked beyond forty in a week.

49.     As a result, Defendant failed to issue Plaintiff Linares weekly wage statements that accurately disclosed the number of hours she worked or her overtime rate of pay in violation of the NJWPL. Specifically, since Plaintiff Linares's wage statements failed to record the number of overtime hours she actually worked, and made no mention of compensation at the mandatory rate for overtime hours, Plaintiff Linares's wage statements were plainly insufficient as a matter of law.

**Roxana Falcon**

***Defendant's Wage Theft Against Ms. Falcon***

50.     Plaintiff Falcon worked for Defendant from in or about mid-November 2019 to January 14, 2022 as a bakery worker. Plaintiff Falcon performed pastry decoration and traditional dessert preparation at Defendant's bakery located at 6510 Bergenline Avenue, in West New York, New Jersey.

51.     In her capacity as a bakery worker, Ms. Falcon's primary duties include *inter alia*: (i) decorating pastries; (ii) cleaning; (iii) preparing other baked goods for baking or removing same from ovens; and (iv) helping out with selling products to customers as needed.

52.     Throughout her employment, Plaintiff Falcon worked six days per week, from 5:00 a.m. or 6:00 a.m. until between 4:30 p.m. and 5:30 p.m., for an average of sixty-five hours per week.

53.     Throughout her employment, Defendant paid Plaintiff Falcon $16.00 per hour.

54.     Despite working upwards of twenty-five hours of overtime per week during virtually all weeks of her employment, Defendant never paid Plaintiff Falcon at the rate of one and one-half times her regular rates of pay (i.e., $24.00 per hour), for any of the hours she worked beyond forty in a week.

55.     To conceal its wrongdoing, Defendant paid Plaintiff Falcon entirely in cash, refusing to provide her with any wage statement / paystub enabling her to track how many hours Defendant paid her for each week.

56.     Making matters even worse, Plaintiff Falcon would often notice that Defendant had failed to per her for all of her hours worked each week. On those instances when Plaintiff Falcon realized her wages were missing hours, Plaintiff Falcon complained to her manager, Mariela (last name unknown), who would summarily dismiss Plaintiff Falcon's complaints by telling her "there is nothing I can do about it."

57.     As a result, Defendant failed to issue Plaintiff Falcon weekly wage statements that accurately disclosed the number of hours she worked or her overtime rate of pay in violation of the NJWPL. Specifically, since Plaintiff Falcon's wage statements failed to record the number of overtime hours she actually worked, and made no mention of compensation at the mandatory rate for overtime hours, Plaintiff Falcon's wage statements were plainly insufficient as a matter of law.

***Defendant Retaliates Against Ms. Falcon for Complaining About Workplace Harassment***

58.     In addition to wage theft, Defendant unlawfully retaliated against Plaintiff Falcon after she complained about workplace harassment.

59.     That is, beginning in early September 2021, one of Plaintiff Falcon's coworkers, Rolando Sanchez, began sexually harassing her at work.

60.     Sanchez worked for Defendant for many years as a cleaner at the Bergenline Avenue bakery.

61.     Specifically, during working hours, Mr. Sanchez snuck up behind Plaintiff Falcon and began massaging her shoulders in a sexually suggestive manner, while propositioning her for an after-work date.

62.     Shocked, Plaintiff Falcon immediately objected. She quickly jerked her body away from Mr. Sanchez, and loudly protested to him about his touching her without her permission, noting further that she was a married woman and she wished to focus on her work.

63.     For virtually every day for the next two months, Sanchez continued to repeatedly sexually harass Plaintiff Falcon, attempting to hug her at work, trying to rub her shoulders, and regularly asking her for a date. Evidently unbothered by Plaintiff Falcon's marital status, Sanchez would persist in his harassment, stating that "nobody would need to find out" and that he and Plaintiff Falcon "could just keep it between us."

64.     Fed up, in or around late November 2021, Plaintiff Falcon complained to her supervisor, Mariela (last name unknown), about Sanchez's unrelenting sexual harassment.

65.     In response, Mariela claimed that she would "investigate" the matter.

66.     Within two days, Mariela expressed to Plaintiff Falcon that, after reviewing surveillance footage, Mariela determined that her complaint was "unfounded," but she nevertheless assured Plaintiff that Sanchez would "stop bothering her."

67.     Immediately thereafter, Sanchez ceased harassing Plaintiff Falcon, but in so doing, Sanchez also stopped performing his job duties in Plaintiff Falcon's workstation. That is, Plaintiff Falcon was now responsible for cleaning her work area and removing any garbage that accumulated over the course of her workday.

68.     Plaintiff Falcon carried on with her work responsibilities, largely without incident, up until January 12, 2022. On that day, Plaintiff Falcon inquired with Mariela regarding that status of what was her routine year-end Christmas bonus, as Plaintiff Falcon had not yet received the bonus as of that date.

69.     Two days later, on January 14, 2022, Mariela met with Plaintiff Falcon and informed her that she would not be receiving a Christmas bonus this year because, in Mariela's words, Plaintiff Falcon "made an unfounded complaint about sexual harassment about your coworker." Making Defendant's retaliatory motive clear, Mariela then proceeded to terminate Plaintiff Falcon's employment on the spot, noting that Defendant "can't have this here" and that as a result, Defendant was "letting [her] go."

70.     Plaintiff Falcon has suffered and continues to suffer substantial harm as a result of Defendant's overt retaliation in response to her sexual harassment complaint.

**Iris Diaz**

71.     Plaintiff Diaz worked for Defendant from in around early July 2018 until in or around late March / early April 2020 shortly after the start of the COVID-19 global pandemic. Plaintiff Diaz worked as a bakery worker performing pastry decoration at Defendant's bakery located at 6510 Bergenline Avenue, in West New York, New Jersey.

72.     In her capacity as a bakery worker, Ms. Diaz's primary duties include *inter alia*: (i) decorating pastries; (ii) cleaning; (iii) preparing other baked goods for baking or removing same from ovens; and (iv) helping out with selling products to customers as needed.

73.     Throughout her employment, Plaintiff Diaz worked six days per week, from 1:30 p.m. until between 9:30 p.m. and 10:00 p.m., for an average of fifty-one hours per week.

74.     From the start of her employment until on or around August 5, 2019, Defendant paid Plaintiff Diaz $11.00 per hour.

75.     Despite working upwards of eleven hours of overtime per week during virtually all weeks of her employment, Defendant never paid Plaintiff Diaz at the rate of one and one-half times her regular rates of pay (i.e., $16.50 per hour), for any of the hours she worked beyond forty in a week.

76.     To conceal its wrongdoing, Defendant paid Plaintiff Diaz entirely in cash and providing her with no paystub listing any of the hours that she worked each week. Defendant paid Plaintiff Diaz in cash at her straight-time rate of pay for all hours worked, including those worked beyond forty in a week.

77.     As a result, Defendant failed to issue Plaintiff Diaz weekly wage statements that accurately disclosed the number of hours she worked or her overtime rate of pay in violation of the NJWPL. Specifically, since Plaintiff Diaz's wage statements failed to record the number of overtime hours she actually worked, and made no mention of compensation at the mandatory rate for overtime hours, Plaintiff Diaz's wage statements were plainly insufficient as a matter of law.

**John Jairo Soto**

78.     Plaintiff Soto worked for Defendant from in around October 2018 until in or around October 2021. Plaintiff Soto worked as a delivery driver, driving Defendant's vehicles and delivering products in and around New Jersey and New York, for each of Defendant's bakery locations and warehouse.

79.     Throughout his employment, Plaintiff Soto worked six days per week. Though his hours sometimes varied, he typically worked from 5:00 a.m. or 5:30 a.m., until between 2:00 p.m. and 4:00 p.m., for an average of between fifty-one and sixty-six hours per week.

80.     From the start of his employment until in or around February 2021, Defendant paid Plaintiff Soto $15.00 per hour.

81.     Thereafter, Defendant paid Plaintiff Soto $17.00 per hour until the remainder of his employment.

82.     Despite working upwards of twenty-six hours of overtime per week during virtually all weeks of his employment, Defendant never paid Plaintiff Soto at the rate of one and one-half times his regular rates of pay (i.e., neither $22.50 per hour, nor later $25.50 per hour), for any of the hours he worked beyond forty in a week.

83.     To conceal its wrongdoing, Defendant paid Plaintiff Soto thirty hours per week via paycheck, while paying Plaintiff Soto the remainder of his hours in cash at his straight-time rate of pay for all hours worked - - whether above or below forty in a week.

84.     By way of example only, during the week of April 18, 2019 through Aptil 24, 2019, Plaintiff Soto worked a total of fifty-two hours during this week. Defendant paid him $15.00 per hour for all hours worked during this week. Defendant never paid Plaintiff Soto at the rate of $22.50 for any of the twelver hours of overtime he worked that week.

85.     As a result, Defendant failed to issue Plaintiff Soto weekly wage statements that accurately disclosed the number of hours he worked or his overtime rate of pay in violation of the NJWPL. Specifically, since Plaintiff Soto's wage statements failed to record the number of overtime hours he actually worked, and made no mention of compensation at the mandatory rate for overtime hours, Plaintiff Soto's wage statements were plainly insufficient as a matter of law.

86.     Defendant treated all of its bakery workers and drivers in the manner described above to maximize their profits while reducing their overhead.

87.     All hours that Plaintiffs worked was for Defendant's benefit.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
### *Unpaid Overtime under the FLSA*

88.    Plaintiff and FLSA Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

89.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

90.    As described above, Defendant is an "employer" within the meaning of the FLSA, while Plaintiff and FLSA Plaintiffs are "employees" within the meaning of the FLSA.

91.    Plaintiff and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendant failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions, instead paying them only at their straight-time rates of pay for all (or nearly all) hours.

92.    Defendant willfully violated the FLSA by intentionally concealing its wage theft through paying Plaintiffs and FLSA Plaintiffs for only forty hours per week via paycheck, while paying all remaining hours in cash.

93.    Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

94.    Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendant's violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
### *Unpaid Overtime under the NJWHL and NJWPL*

95.    Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96.     The NJWHL, N.J.S.A. § 34:11-56(a) *et seq.*, and the NJWPL, N.J.S.A. § 34:11-4.1, *et seq.*, requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay, or one and one-half times the minimum wage rate, if greater, for all hours worked exceeding forty in a workweek.

97.     Moreover, the NJWPL requires employers to pay their employees all wages earned on a timely basis, and to provide an accurate, timely statement to employees on each pay day listing, *inter alia*, their actual hours worked and actual overtime wages received.

98.     Defendant is an "employer" within the meaning of the NJWHL and the NJWPL, while Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the NJWHL and the NJWPL.

99.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action worked in excess of forty hours in a workweek, yet Defendant failed to compensate them in accordance with the NJWHL's and the NJWPL's requirements.

100.     Moreover, Plaintiff Falcon, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action were not timely compensated for all hours worked, despite raising complaints about same to Defendant.

101.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their regular rate of pay, or one and one-half the minimum wage rate, if greater.

102.     Plaintiff, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are also entitled to 200% liquidated damages, interest, attorneys' fees, and costs for Defendant's violations of the NJWHL and NJWPL.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANT**
**ON BEHALF OF PLAINTIFF FALCON ONLY**
*Discrimination and Retaliation under the NJLAD*

103.     Plaintiff Falcon repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

104.     The NJLAD, N.J.S.A. § 10:5-1, *et seq.*, prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's gender, and prohibit retaliation against any such person for raising a good faith complaint about workplace harassment.

105.     Plaintiff Falcon, as described above, was at all times a "person" and "employee" as those terms are defined under the NJLAD, N.J.S.A. § 10:5-5(a), (f), while Defendant was at all times an "employer" as defined under the NJLAD, N.J.S.A. § 10:5-5(e).

106.     As described above, Plaintiff Falcon raised good faith complaints to her supervisor, Mariela (last name unknown), about workplace gender discrimination in the form of sexual harassment.

107.     As further described above, Defendant retaliated against Plaintiff Falcon by denying her an annual Christmas bonus and by terminating her employment in direct response to Plaintiff Falcon's complaint objecting to workplace sexual harassment, in violation of the NJLAD, N.J.S.A. § 10:5-12(11)(a), (d), and (e).

108.     Plaintiffs Falcon has suffered, and continues to suffer, damages as a result of Defendant's discrimination and retaliation.

109.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NJLAD, Plaintiff Falcon has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress

and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

110.   As a result of the forgoing, Plaintiff Falcon is entitled to economic damages, including lost wages and front pay in lieu of reinstatement, as well as compensatory damages, punitive damages, plus litigation costs and reasonable attorneys' fees.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT ON BEHALF OF PLAINTIFFS FALCON ONLY
#### *Retaliation under CEPA*

111.   Plaintiffs Falcon repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

112.   CEPA, N.J.S.A. § 34:19-1 *et seq.*, prohibits employers from taking any retaliatory action against any employee because the employee, *inter alia*, discloses to a supervisor or objects to participate in any activity that the employee reasonably believes is in violation of a law, rule, or regulation.

113.   As described above, at all relevant times, Defendant was an "employer" while Plaintiff Falcon was an "employee" as those terms are defined by CEPA.

114.   As further described above, after Plaintiff Falcon complained to her supervisor, Mariela, about what she reasonably believed to be workplace gender discrimination and sexual harassment in violation of the law, Defendant retaliated by, *inter alia*, terminating her employment.

115.   Plaintiffs Falcon has suffered, and continues to suffer, damages as a result of Defendant's discrimination and retaliation.

116.   As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of CEPA, Plaintiff Falcon has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress

and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

117.    As a result of the forgoing, Plaintiff Falcon is entitled to economic damages, including lost wages and front pay in lieu of reinstatement, as well as compensatory damages, punitive damages, plus litigation costs and reasonable attorneys' fees.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT**
**ON BEHALF OF PLAINTIFF FALCON ONLY**
*Common Law-Whistleblower/Retaliation*

118.    Plaintiff Falcon repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

119.    The foregoing facts and circumstances demonstrate that Defendant has violated its common law obligations set forth by the New Jersey Supreme Court in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980).

120.    Further, Defendant retaliated against Plaintiff Falcon for objecting to workplace sexual harassment and gender discrimination by terminating her employment.

121.    As a consequence of Defendant's retaliatory actions in violation of New Jersey common law, Plaintiff Falcon is now suffering substantial injury, including emotional distress and monetary damages, and will continue to do so unless and until the Court grants relief.

122.    As a consequence of Defendant's retaliatory actions, Plaintiff Falcon is entitled to recover from Defendant lost pay, compensatory damages, punitive damages, costs, attorney's fees, and other appropriate relief.

**DEMAND FOR A JURY TRIAL**

123.    Pursuant to FRCP 38(b), Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs demand judgment against Defendant as follows:

a.      A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.      Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.      An order restraining Defendant from any retaliation against Plaintiffs, FLSA Plaintiffs, and/or Rule 23 Plaintiffs for participation in any form in this litigation;

d.      Designation of this action as an FLSA collective action on behalf of Plaintiffs and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.      Certification of the claims brought in this case under the NJWHL and NJWPL as a class action pursuant to FRCP 23;

f.      Designation of Plaintiffs and their counsel as class/collective action representatives under the FRCP and the FLSA;

g.      All damages that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs have sustained as a result of the Defendant's conduct, including all unpaid wages and any shortfall between wages

paid and those due under the law that Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs would have received but for Defendant's unlawful payment practices;

       h.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and NJWHL/NJWPL, including 200% liquidated damages under New Jersey law;

       i.      Awarding Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiffs;

       j.      Awarding Plaintiffs with a service award for their role as class action representatives and in recognition for their dedication to the Rule 23 Plaintiffs and their willingness to come forward as the lead Plaintiff on behalf of the FLSA Plaintiffs and Rule 23 Plaintiffs;

       k.      For Plaintiff Linares's discrimination and retaliation claims, awarding all non-monetary and/or compensatory damages, including but not limited to, compensation for severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

       l.      For Plaintiff Linares's discrimination and retaliation claims, awarding damages in an amount to be determined at trial to compensate them for harm to her professional and personal reputations and loss of career fulfillment;

       m.      For Plaintiff Linares's discrimination and retaliation claims, punitive damages to the extent authorized by law in an amount commensurate with Defendant's ability and to deter future unlawful conduct;

       n.      Pre-judgment and post-judgment interest, as provided by law; and

o.      Granting Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs such other and further

relief as this Court finds necessary and proper.

Date:   New York, New York
        May 18, 2022

                                        Respectfully submitted,

                                        JOSEPH & NORINSBERG, LLC

                            By:         _____
                                        Jon L. Norinsberg, Esq.
                                        Michael R. Minkoff, Esq.
                                        110 E. 59th Street, Suite 3200
                                        New York, New York 10007
                                        (212) 227-5700
                                        *Attorneys for Plaintiffs*